1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11

THOMAS WILLIAM MARTINS,          )     NO. EDCV 10-06732 SS
12                                )
                  Plaintiff,      )
13                                )
           v.                     )     **MEMORANDUM DECISION AND ORDER**
14                                )
MICHAEL J. ASTRUE,                )
15  Commissioner of the Social    )
Security Administration,          )
16                                )
                  Defendant.      )
17  _____)

18

19                              **I.**

20                         **INTRODUCTION**

21

22       Thomas William Martins ("Plaintiff") seeks to overturn the decision

23  of the Commissioner of the Social Security Administration (the

24  "Commissioner" or the "Agency") to deny his application for Supplemental

25  Security Income ("SSI") Benefits.  Alternatively, he asks that this

26  Court remand Plaintiff's case for further review.

27  //

28

The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge.  For the reasons stated below, the decision of the Commissioner is REVERSED and the case is REMANDED for further proceedings consistent with this decision.

## II.

### STATEMENT OF FACTS

Plaintiff protectively applied for Title XVI SSI benefits on April 18, 2004, claiming disability since October 15, 1989.  (Administrative Record ("AR") 47, 66).  The Agency initially denied Plaintiff's claims on December 27, 2004.  (AR 31-35).  Plaintiff requested reconsideration on March 1, 2005.  (AR 36).  The Agency denied his claims again on April 27, 2005.  (AR 37-42).  Thereafter, Plaintiff filed a Request For Hearing By Administrative Law Judge on August 18, 2005.  (AR 46).

The Agency scheduled a teleconference video hearing on October 19, 2007, wherein Plaintiff testified from Santa Barbara, California before an Administrative Law Judge ("ALJ") in Phoenix, Arizona.  (AR 266-93). At this hearing, Plaintiff waived his right to counsel.  (AR 270). Plaintiff's mother and father, Merle and Anthony Martins, also testified at this hearing.  (AR 283-93).[1]  The ALJ denied Plaintiff's claim on

_____

[1] According to both the ALJ and Plaintiff, Barbara A. Miksic, a vocational expert under contract with the Office of Disability Adjudication and Review, was also present at the October 19, 2007 hearing, but did not testify.  (AR 19; Plaintiff's Reply at 2). However, Ms. Miksic's presence at the hearing has no bearing on the

March 27, 2008.  (AR 16-26).  On April 2, 2008, Plaintiff requested review of the ALJ's decision.  (AR 15).  On July 17, 2010, the Agency denied Plaintiff's request, (AR 5-7), and Plaintiff commenced this action on September 17, 2010.  (Plaintiff's Complaint at 2).

On April 24, 2009, Plaintiff filed a new SSI application claiming the same medical and mental impairments as the application at issue in this case.  (Plaintiff's Memorandum In Support of Plaintiff's Complaint ("Plaintiff's Memorandum") at 2).  The Agency approved this application, and Plaintiff has been receiving SSI since May 2009.  (Id.).

**III.**

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate  a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in

---

present case because there is no record of her appearance in the transcript of that hearing, and because the ALJ did not elicit or rely on testimony from Ms. Miksic.

    [2] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  See 20 C.F.R. §§ 404.1510, 416.910.

the national economy.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)     Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)     Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)     Does the claimant's impairment meet or equal one of list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)     Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)     Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

<u>Tackett</u>, 180 F.3d at 1098-99; <u>see also</u> <u>Bustamante v. Massanari</u>, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

4

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. <u>Bustamante</u>, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. <u>Id.</u> at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity[3] ("RFC"), age, education, and work experience. <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000) (citing <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988)).

/ /

/ /

/ /

/ /

---

[3] Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

# IV.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

/ /

/ /

6

## V.

## DISCUSSION

Plaintiff contends the ALJ erred in two respects in his decision to deny benefits. (Plaintiff's Memorandum at 2, 4). First, Plaintiff argues the ALJ erred in his assessment of Plaintiff's RFC. (<u>Id.</u> at 2). Specifically, Plaintiff asserts the ALJ failed to include the "significant work-related mental limitations" proffered by Dr. Scott, Kopoian, Ph.D. ("Dr. Kopoian"), a consultative psychological examiner, and failed to address the mental-functioning limitations assessed by the State Agency reviewing medical consultant (the "Agency Consultant"). (<u>Id.</u> at 2-4). Second, Plaintiff asserts "the ALJ erred in applying [the Grids] to reach a conclusion that Plaintiff was not disabled." (<u>Id.</u> at 4).

The Court agrees with both of Plaintiff's arguments. For the reasons discussed below, the Court finds that the ALJ's decision should be reversed and this action remanded for further proceedings.

## A.    The ALJ Erred In The Assessment Of Plaintiff's RFC

Plaintiff argues the ALJ's RFC finding is erroneous for two reasons. (Plaintiff's Memorandum at 2-4). First, Plaintiff contends that the ALJ "failed to incorporate into his mental [RFC] finding significant work-related mental limitations assessed by consultative psychological examiner, Dr. [Kopoian]." (<u>Id.</u> at 2). Second, Plaintiff

7

argues that the ALJ "failed to adequately address the specific limitations in mental functioning assessed by the [Agency Consultant]." (Id. at 3). The Court agrees.

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545). An RFC assessment requires the ALJ to consider a claimant's impairments and any related symptoms that may "cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining a claimant's RFC, the ALJ considers all relevant evidence, including residual functional capacity assessments made by consultative examiners, State Agency physicians and medical experts. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); 20 C.F.R. §§ 404.1513(c), 416.913(c). If a physician's RFC assessment is not contradicted by another physician, the ALJ must provide clear and convincing reasons for rejecting that opinion. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended) ("[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician.") (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)).

/ /

/ /

/ /

/ /

### 1. The ALJ Failed To Incorporate Dr. Kopoian's July 14, 2004 Psychological Evaluation Into The RFC

In his July 14, 2004 Psychological Evaluation, Dr. Kopoian opined "[Plaintiff's] overall level of intellectual functioning is in the borderline range, and most likely represents a decline in his ability . . . [i]t is probable that he would be unable to consistently perform detailed and complex tasks because of his tendency to become emotionally disorganized as task complexity increases." (AR 204-09). He further noted, "[i]t is likely that [Plaintiff] cannot consistently interact with peers without exhibiting behavioral extremes because of his tendency to react extremely to provocation." (AR 209). Dr. Kopoian ultimately recommended that Plaintiff "would need to avoid jobs with high levels of contact with the public and would need his interactions with peers closely monitored." (Id.).

Although the ALJ relied on Dr. Kopoian's evaluation for the Step Two "severity" analysis, he selectively used parts of Dr. Kopoian's report in his RFC analysis without giving clear and convincing reasons for rejecting the portions of the report he failed to incorporate. (AR 22-24, 209). Despite the several limitations described in Dr. Kopoian's Psychological Evaluation, the RFC contains only one mental-functioning limitation that states, "the claimant has the ability to perform simple, repetitive tasks in a work setting with minimal social contact." (AR 24). This limitation does not adequately reflect Dr. Kopoian's assessment that Plaintiff's "overall level of intellectual functioning

is in the borderline range, and . . . represents a decline in his ability." (AR 209). Nor does "simple, repetitive tasks" adequately capture Dr. Kopoian's observation that Plaintiff has the "tendency to become emotionally disorganized as task complexity increases." (Id.). Most importantly, the RFC's limitation of "minimal social contact" fails to adequately address the likelihood that Plaintiff "cannot consistently interact with peers without exhibiting behavioral extremes because of his tendency to react extremely to provocation," and completely ignores Dr. Kopoian's recommendation that Plaintiff's interactions with peers be "closely monitored." (Id.).

Although Defendant argues the ALJ reasonably translated Dr. Kopoian's findings into his RFC, and, therefore, did not omit portions of Dr. Kopoian's report, (Defendant's Memorandum in Support of Defendant's Answer ("Defendant's Memorandum") at 3), the Court finds this argument unpersuasive. For the reasons stated above, the ALJ's "translation" of Dr. Kopoian's report does not adequately address the significant limitations assessed by Dr. Kopoian. Furthermore, Dr. Kopoian's report is not vague or general, and therefore is not "susceptible to more than one rational interpretation" as asserted by Defendant. (Id.) (quoting Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989)). For instance, Dr. Kopoian's specific recommendation that Plaintiff's interactions with peers be closely monitored cannot be rationally construed to mean simply "minimal social contact." Monitoring requires continuous affirmative acts by the employer, whereas, "minimal social contact" requires far less. Accordingly, the

ALJ erred in disregarding this portion of Dr. Kopoian's report because he failed to provide clear and convincing reasons for doing so.  See <u>Lester</u>, 81 F.3d at 830 (as amended).

**2.    The ALJ Failed To Adequately Incorporate The Mental Residual Functional Capacity Assessment In His RFC Determination**

At the behest of the Agency, a Mental Residual Functional Capacity Assessment ("Mental RFCA") was prepared.  (AR 223-232). Out of twenty areas of mental functioning, Plaintiff exhibited "moderate" limitations in ten of the categories including the ability to, "understand and remember detailed instructions," "carry out detailed instructions," "maintain attention and concentration for extended periods," "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "work in coordination with or proximity to others without being distracted by them," "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," "interact appropriately with the general public," "accept instructions and respond appropriately to criticism from supervisors," "get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "set realistic goals or make plans independently of others."  (AR 223-24).

The ALJ's RFC oversimplifies the limitations assessed in the Mental RFCA, and fails to capture the nuances of each of these limitations. The RFC limits Plaintiff to "simple, repetitive tasks in a work setting with minimal social contact." (AR 24). Although the "simple, repetitive tasks" limitation accounts for Plaintiff's assessed limitations in concentration and ability to carry out detailed instructions, neither the "simple, repetitive tasks" limitation nor the "minimal social contact" limitation adequately address the full scope of the other limitations assessed by the Agency Consultant. In particular, the RFC fails to adequately address Plaintiff's diminished ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," "accept instructions and respond appropriately to criticism from supervisors," "get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "set realistic goals or make plans independently of others." (AR 223-24).

Defendant argues that the ALJ reasonably interpreted and incorporated the Mental RFCA into his RFC. (Defendant's Memorandum at 4). Specifically, Defendant notes "that even individuals with marked limitations in maintaining concentration and pace have been found with the ability to perform simple repetitive work." (Id. at 4) (citing Thomas v. Barnhart, 278 F.3d 947, 957-58 (9th Cir. 2002)). However, this argument fails to take into account that the Mental RFCA found

12

Plaintiff suffered not only from moderate limitations to his ability to maintain concentration, but also nine other moderate limitations to mental functioning. In the aggregate, these limitations would have a significant impact on Plaintiff's ability to work, and therefore, the ALJ's finding of "simple, repetitive work" with "minimal social contact" does not adequately reflect the Mental RFCA's description of Plaintiff's limitations, and therefore is not a reasonable interpretation of the Mental RFCA. On remand, the ALJ shall consider all ten of the limitations assessed in the Mental RFCA, and the impact of those limitations on Plaintiff's ability to work.

**B.** **The ALJ Erred By Relying Solely On The Grids To Determine Whether Plaintiff Is Disabled**

To determine if substantial gainful work exists for a claimant, an ALJ may use the Grids to consider claimants with substantially uniform levels of impairment. Burkhart, 856 F.2d at 1340. However, when the Grids do not completely describe the claimant's abilities and limitations, such as when the claimant has both exertional and significant non-exertional limitations (as is the case in the instant claim), the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Id.; see also Cooper, 880 F.2d at 1155.

Examples of non-exertional limitations that make the Grids inapplicable include poor vision, Tackett, 180 F.3d at 1101-02; pain, see Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); and

13

"'mental, sensory, postural, manipulative, or environmental (e.g., inability to tolerate dust or fumes) limitations.'" Burkhart, 856 F.2d at 1340-41 (quoting Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 579 (9th Cir. 1988) (Pregerson, J. concurring)). When a claimant has "significant non-exertional limitations," the ALJ cannot rely solely on the Grids. Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (citing Desrosiers, 846 F.2d at 577); see also Burkhart, 856 F.2d at 1340 ("When a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations, the [G]rids are inapplicable.") (citing Desrosiers, 846 F.2d at 577) (internal quotations omitted).

Here, the Administrative Record demonstrates that Plaintiff's non-exertional limitations, i.e., mental limitations, were "sufficiently severe" during the alleged period of disability to render the ALJ's reliance on the Grids without consulting a vocational expert error. See Burkhart, 856 F.2d at 1340. In addition to the limitations assessed by Dr. Kopoian and the Mental RFCA as examined above, Plaintiff's treatment records during his time in Wasco State Prison evidence consistent diagnoses and treatment for Plaintiff's significant mental impairments. For instance, on February 5, 2003, the prison psychologist, F. Aldavoud, Ph.D., diagnosed Plaintiff as having "Psychotic [Disorder] NOS." (AR 168). This diagnosis was echoed in the February 26, 2004 Condensed Mental Health Assessment & Treatment Setting Transfer & Parole Discharge Form, (AR 141), and the March 2, 2004 Mental Health Interdisciplinary

Progress Notes (AR 133). In addition, the March 2, 2004 Mental Health Treatment Plan reflects treatment for "auditory [and] visual hallucinations." (AR 135-36). Finally, Progress Notes taken by the prison's staff psychologist, Nancy Nauman, Ph.D., on March 16, 2004 indicate Plaintiff may have been suffering from schizophrenia, and was taking Remeron and Zypnexa, which treat depression and bi-polar disorder, respectively. (AR 130-131). Plaintiff's prison treatment records are consistent with and not contradicted by the rest of the Administrative Record.

In addition, the Commissioner approved Plaintiff's subsequent April 24, 2009 SSI application that was based on the same medical and mental impairments alleged in his April 18, 2004 SSI protective filing. (Plaintiff's Memorandum at 2). As the 2009 finding of disability is based on similar allegations of mental impairment as Plaintiff's 2004 application, and because the Administrative Record contains evidence that these impairments existed prior to 2009, it is likely these impairments (now disabling) were significant. Accordingly, it was error for the ALJ to rely solely on the Grids.

Quoting Hoopai, 499 F.3d at 1077, Defendant argues that the moderate limitations in Plaintiff's ability to "maintain attention and concentration for extended periods due to mental limitations" were not "sufficiently severe non-exertional limitation[s] that prohibited the ALJ's reliance on the grids without the assistance of a vocational expert." (Defendant's Memorandum at 5) (internal quotations omitted).

However, Defendant fails to note that unlike the plaintiff in <u>Hoopai</u>, Plaintiff also has moderate limitations in nine other areas of mental functioning in addition to the moderate limitation in his ability to maintain concentration and attention for extended periods. (AR 223-232). The instant case is also distinguishable from <u>Hoopai</u> because Plaintiff's mood disorder necessitates limited interactions with the public and requires that his interactions with peers be closely monitored. (AR 209).

Given the significant non-exertional limitations described above, it was error for the ALJ to rely solely on the Grids. Upon remand, in addition to re-evaluating Plaintiff's RFC with the finding that Plaintiff's mental impairment is severe, at Step Two, the ALJ must obtain testimony from a vocational expert, who can consider the record evidence concerning both exertional and non-exertional limitations of Plaintiff.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

**VI.**

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this decision. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 1, 2011

```
                              _____
                                        /S/
                              SUZANNE H. SEGAL
                              UNITED STATES MAGISTRATE JUDGE
```

17